UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| In the Matter of | ) | |
| | ) | |
| LINDA S ISAACS, | ) | CASE NO. 14-50679 |
| | ) | |
| Debtor. | ) | Chapter 13 |
| --------------------------------------- | ) | |
| LINDA S ISAACS, | ) | |
| Plaintiff | ) | |
| | ) | CASE NO. 14-05021 |
| v. | ) | |
| | ) | Adversary Proceeding |
| DBI-ASG COINVESTOR FUND III, LLC, | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION

Before this Court are cross motions for summary judgment on the adversary proceeding initiated by Chapter 13 debtor Linda Isaacs against second mortgagee DBI-ASG Coinvestor Fund III, LLC. The complaint attempts to avoid this second mortgage lien on her residential real property.

## BACKGROUND

Debtors Linda and Michael Isaacs filed jointly for Chapter 7 relief on March 19, 2004, listing their homestead real estate at 494 Highway 819, Kuttawa, Kentucky 42055. This property continues as their residence. In the 2004 Chapter 7 case, the debtors scheduled $820,666.80 in unsecured debt and $502,690.65 in secured debt. Included among the secured debts were the first and second mortgages on the homestead residence both held by GMAC Mortgage Corp., with the debtors valuing the property at $375,000 in the 2004 Chapter 7 petition. The Schedule D listed the first mortgage balance at $319,450 and the second at $86,552, leaving approximately $31,001 of the second mortgage as unsecured according to the

1

bankruptcy petition. GMAC recorded the second mortgage (originally executed February 5, 2003) on June 23, 2004, in Lyon County, which was roughly three months after the Chapter 7 filing, thereby violating the automatic stay of 11 U.S.C. § 362(a). On July 1, 2004, the debtors filed a reaffirmation agreement with GMAC on the first mortgage under § 524(c) of the Bankruptcy Code; the second mortgage, in contrast, was never the subject of a reaffirmation agreement.

The Court issued the Chapter 7 discharge on July 12, 2004, and then on August 27, 2004, the interim Chapter 7 trustee issued a report concluding that no assets could be administered for the benefit of estate creditors, with the case ultimately being closed in 2006. Although their personal liability had been discharged on the second mortgage, the *in rem* aspect of their liability continued in the form of the voluntary mortgage lien placed on the residence. Believing that they would inevitably lose their home in a foreclosure if they did not pay the second mortgage, the debtors continued to make payments thereon during and after the Chapter 7 case (roughly totaling $3320 and $34,030, respectively), while the mortgage company continued to bill them each month up until January 2014, with a total of 117 bills being sent either during or after the Chapter 7 case.

At some point after December 2007, Ocwen Loan Services acquired GMAC's reaffirmed first mortgage, while Roundpoint Mortgage Servicing Corporation ("Roundpoint") had acquired GMAC.'s second mortgage, for which no reaffirmation of personal liability had occurred in the Chapter 7. On the second mortgage, the debtors stopped paying the monthly installments, and Roundpoint filed a foreclosure action on April 10, 2014 (Case No. 14-CI-00047). It also filed a lis pendens notice of the foreclosure case with the Clerk of Lyon County on April 17, 2014. The

2

Lyon County Circuit Court entered a default judgment and order of sale on August 22, 2014, and the foreclosure sale was scheduled for September 30, 2014.

To deal with this imminent foreclosure action, the debtor Linda Isaacs, this time acting alone without Michael Isaacs as a joint debtor, filed the instant Chapter 13 case on September 29, 2014 (Case No. 14-50679), listing only one unsecured claim in the form of a credit-card debt for $261 and one priority unsecured claim for $950. This time, the debtor listed her one-half interest in the real property as holding a value of $131,250, with the full interest of both spouses being $262,500. The balance on the first mortgage that had been reaffirmed in the Chapter 7 case, and now held by Ocwen Loan Service, was listed in Schedule D as $194,000, while the second mortgage now held by Roundpoint was listed as a disputed secured claim with a balance of $103,659.[1]

On October 9, 2014, as the major component of filing the Chapter 13 to defeat the impending foreclosure on the *in rem* claim, the debtor ("Plaintiff") filed an adversary proceeding (No. 14-05021) against second-mortgage-assignee Roundpoint to have the mortgage lien and associated foreclosure judgment be deemed null and void *ab initio* or – alternatively – to strip off the *in rem* claim remaining after the Chapter 7 by derivatively using a trustee's strong-arm avoidance powers under 11 U.S.C. § 544(a). Plaintiff also sued codefendant Wingspan Portfolio Advisors, LLP as an assignee of Roundpoint that took over as loan servicer after Roundpoint filed its foreclosure complaint. On January 3, 2015, this Court granted an agreed motion to dismiss Roundpoint as a party to this adversary proceeding, leaving Wingspan as sole defendant. On July 24, 2015, Defendant DBI-ASG Coinvestor Fund III, LLC ("Defendant") was substituted

---

[1] The other secured creditor, Ally, had a 2014 car loan with an alleged balance of $14,001 on the petition date.

3

for Wingspan as sole defendant.

Although the original complaint in the adversary proceeding does not allege separate counts, it alleges three distinct legal theories of recovery. First, it alleged that the foreclosure action in state court was not initiated within 10 years of the original default in violation of the applicable statute of limitations in KRS § 413.160. Second, it alleged that the lien could be avoided pursuant to 11 U.S.C. § 544(a)(1) and (3) using the trustee's strong-arm power, given that the mortgage was never recorded until the automatic stay was in effect during the previous Chapter 7 case, rendering the act null and void. Thus, the second mortgage lien was never perfected, leaving it vulnerable to the priority given to a trustee's hypothetical judgment-creditor lien over an unperfected security interest. Third, it alleged that the lien could be avoided pursuant to 11 U.S.C. § 544(a)(3), again using the trustee's strong-arm power in that provision, given that an unperfected security interest loses in a priority contest against a trustee holding the rights of a bona fide purchaser of real property who hypothetically records the deed on the date the debtor files the bankruptcy case.

Plaintiff and Defendant filed cross motions for summary judgment seeking to determine the validity of the second mortgage lien in 2016, exploring a legal theory that was never pled in the complaint. At that time, the issue was whether the second mortgage lien had ever attached at all to secure the loan, given the particular language present in the mortgage agreement and the automatic stay violation in the 2004 Chapter 7 case. Although Debtor initially prevailed on that theory, on July 18, 2018, the Sixth Circuit Court of Appeals held that this Court had no subject matter jurisdiction to consider the theory, given the appellate strictures placed on federal courts by the *Rooker-Feldman* doctrine, and given the adjudications already made by the state-court

4

decree in the foreclosure case. *In re Isaacs*, 895 F.3d 904 (6th Cir. 2018). That court specifically held that the existing legal theories pled under § 544(a) were unaffected by the *Rooker-Feldman* doctrine, because they were independent federal legal theories that did not call into question the correctness or incorrectness of the issues decided by the state court in the foreclosure action. *Id.* at 914-15.

On February 19, 2019, Isaacs filed an amended complaint abandoning the statute-of-limitation theory of recovery but adding an additional count to avoid the foreclosure judgment as a preferential transfer on a prepetition debt under 11 U.S.C. § 547(b). As to this amended complaint, Defendant and Plaintiff filed the second round of cross motions for summary judgment currently before this Court on March 29, 2019, and April 26, 2019, respectively.

The Court has subject matter jurisdiction over this adversary proceeding as a matter that arises under Title 11, pursuant to 28 U.S.C. § 1334(b). Use of a trustee's avoiding powers under various provisions of Title 11 is a core matter that has been referred by the district court to the bankruptcy court for final determination pursuant to 28 U.S.C. § 157(b).

## STANDARD FOR SUMMARY JUDGMENT

> Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering such a motion, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party.

*Parks v. LaFace Records*, 329 F.3d 437, 444 (6th Cir. 2003). "Upon a motion for summary judgment, the . . . court is not to make credibility determinations or weigh the evidence . . . ." *Adams v. Metiva*, 31 F.3d 375, 384 (6th Cir. 1994). On cross motions for summary judgment,

5

the trial court is not required to grant either one side's motion or the other. Rather, both motions may be denied where "neither party met its burden of demonstrating that no genuine issue of material fact existed when all inferences were drawn, in turn, for the non-moving party, such that it would be proper for the case to go to trial." *B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 593 (6th Cir. 2001).

## DISCUSSION AND ANALYSIS

<u>Count Utilizing Trustee's Strong-Arm Avoidance Powers Under 11 U.S.C. § 544(a)(1) & (3)</u>

To avoid the second mortgage, the debtor has, pursuant to prior court order, been granted derivative standing to utilize the Chapter 13 trustee's strong-arm avoidance powers under 11 U.S.C. § 544(a), specifically the theories enumerated in § 544(a)(1) and (a)(3):

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by--
> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
> . . . .
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a). In particular, "[s]ection 544(a)(3) grants a trustee the rights and powers of a bona fide purchaser of real property from the debtor if, at the time the bankruptcy is commenced, a hypothetical buyer could have obtained bona fide purchaser status." *Thacker v. United Companies Lending Corp.*, 256 B.R. 724, 728 (W.D. Ky. 2000) (internal quotes omitted). The scope of a trustee's rights under § 544(a) is ultimately determined by the substantive law of the

6

state involved, which determines what liens are vulnerable to the various statuses identified in § 544(a) and what liens are not vulnerable. *In re Mich. Lithographing Co.*, 997 F.2d 1158, 1159 (6th Cir. 1993) (where construction lien was properly recorded, failure to also record a notice of lis pendens did not leave the lien vulnerable to a hypothetical purchaser under Michigan law, who could not have achieved bona-fide-purchaser status); *Johnson v. CIT Grp./Consumer Fin., Inc. (In re Franklin)*, 2006 Bankr. LEXIS 3738, at *6 (Bankr. E.D. Ky. Jan. 25, 2006). In spite of the language of the statute to the effect that the trustee may avoid any transfer of property of the debtor "without regard to any knowledge of the trustee or of any creditor," § 544(a), state law may nevertheless "impute notice of claims to real estate, such as a lis pendens, to all the world," and if this is accomplished, the state law provisions "are not overridden by the strong arm provision of sec. 544(a)(3)." *Johnson v. CIT Grp./Consumer Fin., Inc. (In re Franklin)*, 2006 Bankr. LEXIS 3738, at *6-*8 (Bankr. E.D. Ky. Jan. 25, 2006) (quotations omitted); *see also Realty Portfolio v. Hamilton (In re Hamilton)*, 125 F.3d 292, 298-302 (5th Cir. 1997). Thus, "[i]t matters not whether the debtors personally knew of the mortgage. Rather, the inquiry focuses on whether a bona fide purchaser would have notice [pursuant to Kentucky law]." *Thacker*, 256 B.R. at 728-29.

In the present scenario, the legal complication for the trustee's bona-fide-purchaser status stems from the lis pendens notice[2] of the foreclosure case Roundpoint filed with the Clerk of

---

[2]The pertinent Kentucky statute provides:

(1) **No action, cross-action, counterclaim**, or any other proceeding, except actions for forcible detainer or forcible entry or detainer, **commenced or filed in any court of this state, in which the title to, or the possession or use of, or any lien,** tax, assessment or charge **on real property, or any interest therein, is in any manner affected or involved**, nor any order nor judgment therein, nor any sale or other proceeding, nor any proceeding in, nor judgment or decree rendered, in a district court of the United States, **shall in any manner affect the right, title or interest of any subsequent purchaser, lessee, or encumbrancer of such real property**, or interest for value and **without notice**

7

Lyon County on April 17, 2014. "Lis pendens is defined as '[a] notice, recorded in the chain of title to real property, ... to warn all persons that certain property is the subject matter of litigation, and that any interests acquired during the pendency of the suit are subject to its outcome.'" *Greene v. McFarland*, 43 S.W.3d 258, 260 (Ky. 2001) (quoting *Black's Law Dictionary* 943 (7th ed. 1999)). "A lis pendens notice is appropriate in situations where the title to property is at stake (actions for partition, quiet title, and will contests, for example), and it serves as notice that the purchaser takes the title subject to the same restrictions as would apply to the seller." *Id.* "Because the purpose of the lis pendens is merely to provide notice of the pending litigation, the recording of a lis pendens does not create any additional property rights for the recorder." *Energistica, S.A. v. Mercury Petroleum, Inc.*, 2008 WL 3271986, at *2 (W.D. Ky. Aug. 7, 2008); *see also Redondo Const. Corp. v. United States*, 157 F.3d 1060, 1065 (6th Cir. 1998) ("It is clear, however, that under Kentucky law, a lis pendens notice cannot, independently, create a lien against property.").

Nevertheless, because a lis pendens is, as stated, by definition a form of notice, that notice does have certain legal ramifications for real property, particularly with respect to later

---

**thereof, except from the time there is filed, in the office of the county clerk of the county in which such real property or the greater part thereof lies, a memorandum** stating:
(a) The number of the action, if it is numbered, and the style of such action or proceeding and the court in which it is commenced, or is pending;
(b) The name of the person whose right, title, interest in, or claim to, real property is involved or affected; and
(c) A description of the real property in the county thereby affected.

(2) Such notice may be filed by any party in interest. No notice shall extend to the interest of any person not designated therein, nor to any real property or interest except that described therein, and when any amendment is made in the action or proceeding changing the description of the real property, or interest involved or affected, or extending the claim against the property, the party filing such notice shall file a new notice. . . .

KRS § 382.440 (emphasis added).

8

rights granted to a bankruptcy trustee pursuant to § 544(a)(1) and (3).  In the case of a foreclosure action within the Kentucky courts, the lis pendens notice provides constructive notice to the world of the various liens asserted in the particular case, whether or not those liens are recorded with defects or not recorded at all.  Consequently, Plaintiff and Defendant do not appear to be in substantial disagreement over the fact that the § 544(a)(3) case law specifically applying KRS § 382.440 has clearly indicated that a trustee standing in the shoes of a bona fide purchaser of real estate cannot avoid a defectively recorded mortgage lien of which he has constructive notice or inquiry notice by virtue of the lis pendens.  *See Johnson v. CIT Grp./Consumer Fin., Inc. (In re Franklin)*, 2006 Bankr. LEXIS 3738, at *3-*12 (Bankr. E.D. Ky. Jan. 25, 2006); *In re Jacobs*, 2012 WL 1813120, at *3-*4 (Bankr. E.D. Ky. May 17, 2012).  Nor could a trustee avoid a seller's unfiled equitable lien on the debtor-buyers' assets for the same reason, in the instance of *NAJA, LLC v. Jack's Co., LLC (In re Dynamis Grp., LLC)*, 441 B.R. 841, 847 (Bankr. W.D. Ky. 2011).

      With respect to § 544(a)(1), granting the trustee a judicial lien on the Chapter 13 petition date, Plaintiff relies heavily on the recent Sixth Circuit case, *Harker v. PNC Mortgage Company (In re Oakes)*, 917 F.3d 523 (6th Cir. 2019), where the trustee's claim failed under § 544(a)(3) but succeeded under § 544(a)(1) due to the distinctions made under Ohio law.  Whereas a defectively recorded mortgage was statutorily deemed to create constructive notice of a mortgage lien sufficient to defeat bona purchaser status, such notice was, under Ohio law, legally irrelevant to a subsequent judicial lien creditor attaching a judgment lien to the property, and the trustee was able to avoid the defective mortgage for the benefit of unsecured creditors.  *Id.* at

528-32.

Furthermore, the specific issue under *Kentucky* law is the effect that a lis pendens notice[3] of a mortgage foreclosure case has on a subsequent judicial lien creditor attaching a judgment lien to the property, because the Chapter 13 debtor-as-trustee stands in such creditor's shoes on the filing date. Typically, in Kentucky, when a foreclosure complaint is filed in conjunction with a lis pendens notice in the county clerk's office, all existing interest holders named as defendants up until the filing of the complaint are subject to the outcome of the suit and to the sale of the property clear of all such interests. In contrast, the lis pendens notice operates on a forward-looking basis to subject those who acquire interests in the real estate between the filing of the foreclosure complaint and the foreclosure sale to the same fate. *See generally U.S. Bank, NA v. Hasty*, 232 S.W.3d 536, 538-39, 540-42 (Ky. Ct. App. 2007); *Cumberland Lumber Co. v. First and Farmers Bank of Somerset, Inc.,* 838 S.W.2d 403, 405 (Ky. Ct. App. 1992) ("[T]here is no statutory requirement to name those who acquire a lien after the filing of the petition. The foreclosing plaintiff must name as parties all those he knows to have an interest in the property at the time of filing his petition even if that interest is unrecorded. . . . However, there is no duty for the plaintiff to join pendente lite lienholders to the action."). This combination normally has the powerful effect of eliminating all liens on the real property once the foreclosure sale is complete, whether those interests arose before or after the filing of the foreclosure complaint. An anomalous exception to this rule occurs when a delay between the filing of the complaint and the lis pendens is present, and a judicial lien attaches to the real estate during the hiatus. *E.g.,*

---

[3]The Sixth Circuit in *Harker v. PNC Mortgage Company* specifically noted that the case did not involve the doctrine of lis pendens, as no mortgage foreclosure case had been pending prior to bankruptcy. *Harker*, 917 F.3d at 532 n. 3.

*U.S. Bank, NA v. Hasty*, 232 S.W.3d 536, 538-39, 540-42 (Ky. Ct. App. 2007).  In that event, the foreclosure complaint does not cover the lien, which attaches after a creditor files such a complaint, and the lis pendens notice does not have any effect on the lien, which predates the lis pendens notice of the suit.  *Id.*  In that anomalous circumstance, a judicial lien can actually survive a foreclosure sale and will burden the buyer at that sale.

However, when the filing of the foreclosure complaint and the lis pendens notice are simultaneous (or nearly so), Kentucky law is also clear that a judicial lien that attaches <u>after</u> this combination filing but before the foreclosure sale is eliminated by the completion of the foreclosure sale and related case.  *Cumberland Lumber Co. v. First and Farmers Bank of Somerset, Inc.,* 838 S.W.2d 403 (Ky. Ct. App. 1992).  *Cumberland Lumber Company* indicates that in Kentucky, subsequent judicial lien creditors are subject to the constructive notice that a lis pendens notice filed in conjunction with a foreclosure complaint provides these creditors, even if (1) they have no actual knowledge of the notice or the lien identified therein, and even if (2) they do not intervene in the case.  *Id.* at 403-04.  In *Cumberland Lumber Company*, the first mortgagee filed a foreclosure action and a lis pendens notice thereof on the same day.  After that point but before the foreclosure sale was complete, four creditors obtained judicial liens.  Because the liens were not preexisting, the foreclosure complaint was not required to include those creditors as defendants.  Two of the judicial lien creditors intervened in the foreclosure and were subject to the final decree, sale, and distribution, which did not produce enough funds to pay off those liens.  The other two judicial lien creditors did not intervene as a party; instead, they argued that their liens survived the foreclosure action because they were not parties to it and had no actual notice of it.  The *Cumberland* court held that the latter two judicial liens were

11

extinguished as a combined result of the constructive notice of the mortgage lien and the related foreclosure proceeding that the lis pendens notice provided the judicial lien creditors. *Id.* Thus, under Kentucky law, constructive notice provided by a party's use of the lis pendens statute is relevant to a judicial lien holder with a lien on the same property.

Here, the debtor-as-trustee stands in the shoes of such a creditor on the Chapter 13 filing date, September 29, 2014. On that day, a new judicial lien creditor could have had its lien on the real property terminated by the completion of the foreclosure proceeding involving the real estate at issue, even if it never became a party in that action or knew about it.

In addition to the § 544(a)(3) holding described above, *NAJA, LLC v. Jack's Co., LLC (In re Dynamis Grp., LLC)*, 441 B.R. 841, 847 (Bankr. W.D. Ky. 2011), specifically held that a proper Kentucky lis pendens notice of an equitable lien on real property sold to the debtor – filed in conjunction with a suit to rescind an asset purchase agreement – constituted constructive notice to subsequent judicial lien holders sufficient to defeat a trustee's § 544(a)(1) cause of action.[4] Also, *Commercial Transport Corp. v. Robinson Grain Co.*, 345 F.Supp. 342 (W.D. Ky. 1972), held that, as between competing judgment executions and attachments, a creditor first filing a lis pendens notice pursuant to KRS 382.440 or 382.450 takes precedence over other judgment creditors. These results are consistent with the fact that

> "Kentucky is a race-notice jurisdiction. *See* KRS 382.270-.280. In order to have first priority, 'one must not only be the first to file the mortgage, deed or deed of trust, but the filer must also lack actual or constructive knowledge of any other mortgages, deeds or deeds of trust related to the property.'"

---

[4]*Dynamis Group* is more similar to cases involving an unfiled mortgage, as opposed to a mortgage filed with defects rendering it invalid. In *Dynamis Group*, the creditor merely had an equitable lien on the real estate and other assets sold to the buyer-debtor. The constructive notice created by the lis pendens in a suit to rescind the sale transaction had the effect of perfecting the equitable lien as to subsequent bona fide purchasers and judicial lien creditors.

12

*Hays v. Nationstar Mortg. LLC*, 510 S.W.3d 327, 329 (Ky. Ct. App. 2017) (quoting *Mortg. Elec. Registration Sys., Inc. v. Roberts*, 366 S.W.3d 405, 407-08 (Ky. 2012)).

Accordingly, Defendant is also entitled to summary judgment on Plaintiff's § 544(a)(1) cause of action, giving a trustee a hypothetical judicial lien on the petition date.[5]

<u>Count Utilizing Trustee's Strong-Arm Avoidance Powers Under 11 U.S.C. § 547(b)</u>

Isaacs added a new count to avoid the foreclosure judgment as a preferential transfer in an amended complaint filed on February 19, 2019. The Bankruptcy Code deems the elements of a preferential transfer to be as follows:

> [T]he trustee may avoid any transfer of an interest of the debtor in property--
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made--
>     (A) on or within 90 days before the date of the filing of the petition; or
>     (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if--
>     (A) the case were a case under chapter 7 of this title;
>     (B) the transfer had not been made; and
>     (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

---

[5]For § 547(b) preference actions, the date of lien perfection under state law is an issue because it affects when a transfer occurs relative to the 90-day preference period. Although perfection and constructive notice are often intertwined, they are not identical. As discussed, under § 544(a), the primary issue under state law tends to be whether the a judicial lien creditor or a bona fide purchaser had constructive notice or inquiry notice of the property interest the trustee is attempting to avoid. Although Plaintiff cites *Countrywide Home Loans v. Dickson* for the proposition that the "filing of a lis pendens notice [does] not create, or perfect, a lien under Kentucky law," *Countrywide Home Loans v. Dickson (In re Dickson)*, 427 B.R. 399, 407 (B.A.P. 6th Cir. 2010), the issue in this case is whether the lis pendens notice created sufficient constructive notice of a prior interest, not whether it technically perfected that interest for purposes of transfer analysis under § 547(b). For this reason, then, *Dickson*, 427 B.R. 399, 407-08 (B.A.P. 6th Cir. 2010), and *Dickson v. Countrywide Home Loans (In re Dickson)*, 655 F.3d 585, 593-94 (6th Cir. 2011), which affirmed it, are distinguishable. Additionally, lis pendens notices cannot perfect interests in personal property in any event, *id.* at 594, so the result in *Dickson* is distinguishable on that basis as well.

11 U.S.C. § 547(b). Defendant points out that both the mortgage lien itself and the lis pendens notice of the foreclosure suit predated the 90-day preference window falling before Isaacs filed her bankruptcy case; furthermore, whatever preferential transfer exists could only be based on the foreclosure judgment and order of sale occurring within the window.

We can assume for the sake of argument that the foreclosure judgment by itself, and without any subsequent sale of the property, somehow constitutes a technical transfer of the debtor's property interest on account of an antecedent debt within 90 days before the Chapter 13 petition date and while the debtor was insolvent. The real problem with Plaintiff's legal theory is its inadequacy in establishing that the foreclosure judgment in an of itself enabled Defendant to recover more than it would have recovered had the transfer not occurred and a Chapter 7 liquidation case had instead ensued on the same petition date. Where a creditor's claim is a claim secured by real property, and the only event of significance occurring within the 90-day preference window is the foreclosure judgment itself, a trustee generally cannot avoid the foreclosure judgment as a preferential transfer, because, unlike a judicial lien, the foreclosed lien typically predates such judgment and will exist regardless thereof; enforcement of the continuing lien does not create a priority position over general unsecured creditors that did not already exist before the preference period. *See In re Roxrun Estates, Inc.*, 74 B.R. 997, 1004 (Bankr. S.D.N.Y. 1987); *cf. In re PC Systems, Inc.*, 163 B.R. 382, 384-85, 387 (Bankr. S.D. Fla. 1994) (foreclosure on inventory within 90 days of petition not a preference where secured creditor did not receive more than he would have received in a Chapter 7 case). In other words, even if the foreclosure judgment is avoided, the property would either be sold by means of a sale under § 363 within the Chapter 7 case, or the automatic stay would be lifted, § 362(d), or otherwise

14

terminated in the Chapter 7 case, § 362(c), and a later foreclosure would proceed in any event. The value attributed to the debtor's interest in the real property would have a lien on it, and those sale proceeds would be required to be applied toward the creditor's claim. The prepetition foreclosure judgment did not permit the creditor to recover more than it would have recovered in a hypothetical Chapter 7 case.

Close scrutiny of Plaintiff's cross motion reveals that her actual argument that she has satisfied this element of a preference claim is based entirely on her other counts alleging that the trustee's use of his strong-arm avoidance powers under § 544(a)(1) and (3) will avoid the unperfected second mortgage, leaving Defendant's claim as unsecured. As to that unsecured claim, a prepetition foreclosure judgment (and eventual sale of the property) would have resulted in a comparatively larger recovery for Defendant than the $0 it would theoretically recover in a bankruptcy case (given the discharge of personal liability on the mortgage in the previous Chapter 7 case that already occurred). However, this particular brand of § 547(b) theory is not an independent legal theory. It relies entirely on Plaintiff's success on one of the other two counts, which has not transpired, as a starting point for satisfying this element. Because Plaintiff has not independently established that the prepetition foreclosure judgment in this case caused Defendant to recover more than it would have in a hypothetical Chapter 7 liquidation case, she has not met her burden of establishing every element of her claim. Accordingly, summary judgment in favor of Defendant is appropriate on the § 547(b) count.

## CONCLUSION

On Plaintiff's Count alleging that the second mortgage lien should be avoided pursuant to 11 U.S.C. § 544(a)(1), Defendant's motion for summary judgment (Doc. # 122) is granted, and

Plaintiff's cross motion for summary judgment (Doc. # 128) is denied.

On Plaintiff's Count alleging that the second mortgage lien should be avoided pursuant to 11 U.S.C. § 544(a)(3), Defendant's motion for summary judgment (Doc. # 122) is granted, and Plaintiff's cross motion for summary judgment (Doc. # 128) is denied.

On Plaintiff's Count alleging that the second mortgage lien should be avoided pursuant to 11 U.S.C. § 547(b), Defendant's motion for summary judgment (Doc. # 122) is granted, and Plaintiff's cross motion for summary judgment (Doc. # 128) is denied.

A separate order consistent with this opinion will be entered pursuant to Bankruptcy Rule 9021.

Thomas H. Fulton
United States Bankruptcy Judge

Dated: June 27, 2019

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| In the Matter of | ) | |
| | ) | |
| LINDA S ISAACS, | ) | CASE NO. 14-50679 |
| | ) | |
| Debtor. | ) | Chapter 13 |
| ------------------------------------------------------- | ) | |
| LINDA S ISAACS, | ) | |
| Plaintiff | ) | |
| | ) | CASE NO. 14-05021 |
| v. | ) | |
| | ) | Adversary Proceeding |
| DBI-ASG COINVESTOR FUND III, LLC, | ) | |
| Defendant. | ) | |

ORDER

For the reasons stated in the Memorandum Opinion entered on the same date, the Court ORDERS as follows:

On Plaintiff's Count alleging that the second mortgage lien should be avoided pursuant to 11 U.S.C. § 544(a)(1), Defendant's motion for summary judgment (Doc. # 122) is granted, and Plaintiff's cross motion for summary judgment (Doc. # 128) is denied.

On Plaintiff's Count alleging that the second mortgage lien should be avoided pursuant to 11 U.S.C. § 544(a)(3), Defendant's motion for summary judgment (Doc. # 122) is granted, and Plaintiff's cross motion for summary judgment (Doc. # 128) is denied.

On Plaintiff's Count alleging that the second mortgage lien should be avoided pursuant to 11 U.S.C. § 547(b), Defendant's motion for summary judgment (Doc. # 122) is granted, and Plaintiff's cross motion for summary judgment (Doc. # 128) is denied.

Thomas H. Fulton
United States Bankruptcy Judge

Dated:  June 27, 2019